IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES FLUKER, SR., | Case No. 1:09-cv-01193 AWI JLT (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO DISMISS THIS ACTION |
| vs. | (Doc. 15) |
| CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION, et al., | |
| Defendants. | |
| _____/ | |

Plaintiff is a state prisoner proceeding pro se and *in forma pauperis* with a civil rights action pursuant to 42 U.S.C. § 1983. This proceeding was referred to the undersigned magistrate judge in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 302. Pending before the Court is Plaintiff's second amended complaint ("SAC") filed December 30, 2010.

**I.     SCREENING**

**A.     Screening Requirement**

The Court is required to review a case in which a prisoner seeks redress from a governmental entity or officer. 28 U.S.C. § 1915A(a). The Court must review the complaint and dismiss any portion thereof that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). If the Court determines the complaint fails to state a claim, leave to amend should be granted to the extent that the deficiencies can be cured by amendment. Lopez v. Smith, 203 F.3d 1122, 1127-28 (9th Cir. 2000).

1

**B.     Section 1983**

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To plead a § 1983 violation, the plaintiff must allege facts from which it may be inferred that (1) plaintiff was deprived of a federal right, and (2) the person who deprived plaintiff of that right acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Collins v. Womancare, 878 F.2d 1145, 1147 (9th Cir. 1989). To warrant relief under § 1983, the plaintiff must allege and show that the defendants' acts or omissions caused the deprivation of the plaintiff's constitutionally protected rights. Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1993). "A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." Id. There must be an actual causal connection or link between the actions of each defendant and the deprivation alleged to have been suffered by the plaintiff. Monell v. Dept. of Social Services, 436 U.S. 658, 691-92 (1978) (citing Rizzo v. Goode, 423 U.S. 362, 370-71(1976)).

**C.     Rule 8(a)**

Section 1983 complaints are governed by the notice pleading standard in Federal Rule of Civil Procedure 8(a), which provides in relevant part that:

> A pleading that states a claim for relief must contain:
>
> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

The Federal Rules of Civil Procedure adopt a flexible pleading policy. Nevertheless, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (citations and quotations omitted). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 883 (2009) (quoting Twombly, 550 U.S. at 570). Vague and conclusory allegations are insufficient to state a claim under § 1983. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

## II.   THE COMPLAINT

In his amended complaint, Plaintiff alleges as follows. Plaintiff suffers from chronic back pain. On April 12, 2007, Dr. Castillo evaluated Plaintiff and issued a comprehensive accommodation chrono calling for limited work duty, placement in a cell on the first floor, assignment to a bottom bunk, a back brace, and a cane. (Doc. 15 at 8.) In addition, on May 19, 2007, Dr. Castillo submitted a California Department of Corrections and Rehabilitation ("CDCR") Disability Placement Program ("DPP") form, in which he stated that Plaintiff had a mobility impairment and required the cane to assist him in walking. (Id. at 9.)

On August 17, 2007, Plaintiff wrote a letter to the Medical Board of California complaining that he was dissatisfied with the treatment he was receiving in prison. In particular, Plaintiff complained that he experienced delays in receiving treatment for his glaucoma, headaches, and back pain. (Doc. 15 at 9.) The Division of Correctional Health Care Services of the CDCR ("DCHCS") responded to the letter on October 30, 2007. (Id. at 10.) The DCHCS indicated that it appeared from Plaintiff's medical file that he was receiving timely treatment for his medical conditions. (Id. at 10-11.)

On September 6, 2007, Plaintiff was examined by Defendant Green. Green prescribed Gabapentin to reduce the numbness and tingling Plaintiff was experiencing in his hands and feet. (Doc. 15 at 18.) Plaintiff was already receiving Tramadol and Diclofenic for pain relief. (Id.) Green did not issue a medical lay-in slip for Plaintiff, however, because Plaintiff did not appear to suffer from any physical limitations that were not already listed in his limited duty chrono. (Id. at 18.)

On October 1, 2007, Defendant Burgett removed Plaintiff from the DPP. (Doc. 15 at 18-19.) Defendant Burgett noted in a CDCR 1845 form that Plaintiff had been observed walking over 200 yards without pause and therefore, Plaintiff no longer qualified as being disabled. (Id.) The decision to remove Plaintiff from the DPP was later approved by Defendant Greenman on February 26, 2008.[1] (Id. at 11.) Plaintiff asserts that defendants knew that he had serious mobility problems and that he required a cane to assist him in walking. (Id. at 14.) However, by removing him from the DPP they denied him a cane or a walker. Id. When Plaintiff told Defendant Green that the Veteran's Administration Hospital had labeled him a disabled person, Green stated he did not care because those findings held no weight in state prison. (Id. at 27.) In Plaintiff's view, Defendants Burgett, Greenman, and Green removed Plaintiff from the DPP as retaliation for his letter to the Medical Board. (Id. )

On October 11, 2007, Plaintiff was examined once again by Defendant Green. Green increased Plaintiff's prescription for Gabapentin and also referred Plaintiff to a neurosurgeon. (Doc. 15 at 19.) On December 18, 2007, Plaintiff was seen by a neurosurgeon. The neurosurgeon recommended that Plaintiff undergo spinal fusion in his neck and advised Plaintiff to return if he elected to undergo the surgery. (Id. at 19.)

From January 2008 to April 2009, Plaintiff submitted numerous CDCR 7362 Health Care Services Request Forms requesting that he be returned to the prison's disability program. (Doc. 15 at 24.) On several occasions, Plaintiff stated that he had fallen due to weakness and tingling in his legs and due to his lack of a cane. (Id. at 12-13, 15-16.) Nevertheless, Plaintiff did not receive a response to his medical request forms. Plaintiff raised the matter with his physician repeatedly but his doctor consistently claimed that Plaintiff did not have a mobility impairment that would qualify Plaintiff for the disability program. (Id. at 12-14, 20-21, 22-23.)

During this same period, Plaintiff filed several medical complaints regarding the efficacy and side-effects of Gabapentin. (Doc. 15 at 12-13, 21) In response, Plaintiff's physician discontinued

---

[1] Plaintiff's SAC also states that Dr. Greenman issued and signed a CDCR 128-C on January 15, 2008 stating that "plaintiff no longer qualified for the Disability Placement Program." (Doc. 15 at 19-20) Whether Dr. Greenman approved Plaintiff's changed status removing him from the DPP in January or February is of no consequence to the Court's analysis regarding this issue below.

his prescription for Gabapentin on May 14, 2008.  (Id. at 20.)  Thereafter, Plaintiff's physician attempted to prescribe Lyrica but it was not approved based upon its non-formulary status.  (Id. at 21-22.  Likewise, when the doctor referred Plaintiff to psychiatry for an evaluation to determine whether Elavil could be prescribed as an alternative to Gabapentin, but the drug was deemed "not appropriate" for Plaintiff's condition.  (Id. at 24.)  As a result, Plaintiff endured a long period without adequate pain medication.  (Id. at 13-14.)

Plaintiff also alleges that Defendants McCant, Greenman and Moran worked together with Defendant Burgett to deny him an egg-crate double mattress.  (Doc. 15 at 15.)  Though these defendants were aware of Plaintiff's medical condition, they denied his multiple grievances and appeals which reflected their deliberate indifference to Plaintiff's medical needs.  (Id. at 15.)

Based on the above allegations, Plaintiff appears to claim that Defendants provided him inadequate medical care in violation of the Eighth Amendment.  Plaintiff also claims that Defendants Burgett, Greenman, and Green retaliated against him in violation of the First Amendment.  Finally, Plaintiff presents state law claims for medical malpractice and fraud and deceit.  In terms of relief, Plaintiff seeks monetary damages and injunctive relief. (Doc. 15 at 32-33.)

**III.   DISCUSSION**

**A.   Eighth Amendment**

Plaintiff claims that Defendants provided him inadequate medical treatment.  To state a claim for the violation of the Eighth Amendment based on inadequate medical care, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). In other words, the plaintiff must demonstrate: (1) an objectively serious medical need; and (2) a deliberately indifferent response by the defendant.  Conn v. City of Reno, 572 F.3d 1047, 1055 (9th Cir. 2009) (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).  A medical need is serious "if the failure to treat the condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104).  A prison official acts with deliberate indifference if he knowingly fails to respond to a serious medical need, thereby inflicting harm on the plaintiff.  See Jett, 439 F.3d at 1096.  "Mere 'indifference,' 'negligence,' or 'medical malpractice'

5

will not support his cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).

The allegations in the amended complaint sufficiently demonstrate that Plaintiff suffers from an objectively serious medical condition. Plaintiff alleges that he suffers from chronic back pain, which is being treated by various physicians. Plaintiff alleges further that the pain in his back radiates throughout his body and causes pain and numbness in his upper and lower extremities. Moreover, according to Plaintiff, the pain and numbness that he experiences in his legs and feet substantially interfere with his ability to walk. See McGuckin, 974 F.2d at 1059-1060 ("[T]he presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.") (citations omitted).

As before, whether Plaintiff states a cognizable inadequate medical care claim under the Eighth Amendment depends upon whether Plaintiff alleges facts sufficiently demonstrating that Defendants acted with deliberate indifference. Once again, the Court finds that he has not.

First, as before, Plaintiff continues to fail to clearly specify the portions of the medical care related to his back condition that he finds deficit.. Once again, Plaintiff merely recites his extensive history of back-related treatment from 2007 to 2009, vaguely alleges that he continues to suffer from pain and numbness throughout his body, and concludes that Defendants were deliberately indifferent to his serious medical needs. This is insufficient.

Also similar to Plaintiff's previous complaint, the Court presumes, once again, that Plaintiff is disputing: (1) his removal from the DPP; (2) the denial of pain medication for a period of time; and (3) the denial of an egg-crate double mattress.

**1.   Removal from DPP**

As to Plaintiff's claim against Defendant Burgett, Greenman and Green for his removal from the DPP, Plaintiff's facts remain insufficient. This Court's previous order addressing the FAC's version of this same claim found that Plaintiff had failed to allege facts which demonstrated that Defendants had actual knowledge that he faced a substantial risk of significant injury. (Doc. 13 at 6-7.) Though allegations of the FAC asserted that Plaintiff had submitted health care request forms

1  stating he had fallen and injured himself, the Court noted that there were no facts establishing that
2  Burgett, Greenman, or Green had knowledge of these events or the request forms. (Id.)
3       Other than Plaintiff's general statements that Defendants evaluated him and were aware that
4  he "needed a cane," Plaintiff's SAC fails to specifically assert that these defendants were aware that
5  as a result of being taken of the DPP, Plaintiff faced a significant risk of injury. Plaintiff's factual
6  assertions here are both vague and conclusory. In this regard, the Court's previous order advised that
7  "vague and conclusory allegations are insufficient to state a claim under § 1983. [citations omitted]"
8  (Doc. 13 at 3.) Here Plaintiff's facts remain insufficient to state a cognizable Eighth Amendment
9  claim.
10      Moreover, Plaintiff's SAC states that when he requested that his primary care physician place
11 him back in the program, the primary care physician found that he did not have a mobility
12 impairment that qualified him for the disability program. (Doc. 15 at 20-21.) It is well established
13 that neither a difference of opinion between medical personnel regarding treatment nor Plaintiff's
14 difference of opinion with medical staff amounts to deliberate indifference. Sanchez v. Vild, 891
15 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.1981). Thus, to the
16 extent that Plaintiff takes issue with the opinion of his primary care provider in denying his return to
17 the DPP, Plaintiff has failed to demonstrate the required deliberate indifference.

18           **2.**     **Pain Medication**

19      Plaintiff alleges that beginning in May 2008, he did not receive pain medication for forty-nine
20 days. (Doc. 15 at 15.) However, as noted by the Court's previous order, Plaintiff allegations
21 indicate that he was denied medication after his Gabapentin prescription was discontinued following
22 his complaints regarding the drug efficacy and side-effects. (Doc. 10 at 7.) In addition, the order
23 noted that Plaintiff's medical care providers attempted to prescribe other alternate medications
24 (Lyrica and Elavail), however, these medications were subsequently disapproved. (Id. at 6.) Thus
25 rather than demonstrate deliberate indifference, Plaintiff's allegations reflect that his care providers
26 attempted to modify his drug treatment when requested by Plaintiff and provide him with alternative
27 treatment. Id. at 6. Rather than address this deficiency, Plaintiff repeats the nearly identical facts as
28 previously alleged. (Id. at 12-13, 20-21, 22, 24.) Accordingly, Plaintiff's allegations continue to fail

to state a cognizable claim regarding any deliberate indifference on the part of the named defendants. (Id. at 12-13, 20-21, 22, 24.)

### 3. Egg-crate mattress

Plaintiff's SAC now asserts that Defendant's McCant, Greenman, and Moran worked in conjunction with defendant Burgett to deny him an egg-crate double mattress, through denying his grievances and appeals.[2] (Doc. 15 at 15.) In addition, Plaintiff states that these same defendants knew that he had a "serious" medical condition which was causing Plaintiff pain. (Id.) However, Plaintiff's facts are insufficient to state a cognizable claim because his allegations continue to consist of conclusions rather than facts and fail to demonstrate that either McCant, Greenman, or Moran knew of any risk to Plaintiff posed by the denial of the mattress. In addition, as the Court observed previously, a difference of opinion between medical professionals concerning the appropriate course of inmate treatment or care is not enough, by itself, to support a claim of deliberate indifference. Sanchez, 891 F.2d at 242.

### B.   Retaliation

Similar to his FAC, Plaintiff's SAC asserts claims that Defendants Burgett, Greenman, and Green retaliated against him for filing a complaint with the Medical Board. (Doc. 15 at 16.) Under the First Amendment, prison officials may not retaliate against prisoners for initiating litigation or filing grievances. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005). A viable claim for First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) the inmate's protected conduct and that the adverse action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the adverse action did not reasonably advance a legitimate penological purpose. Id.; Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994).

Plaintiff's SAC fails to state a cognizable retaliation claim because as the Court's previous order recognized, it is simply not plausible that Defendants Burgett, Greenman, and Green acted with

---

[2] The Court notes that generally, denying a prisoner's administrative appeal does not cause or contribute to the underlying violation. George v. Smith, 507 F.3d 605, 609 (7th Cir.2007) (quotation marks omitted). The mere existence of an inmate appeals process does not create a protected liberty interest upon which Plaintiff may base a claim that he was denied a particular result or that the appeals process was somehow deficient. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).

8

1 retaliatory intent. (Doc. 13 at 7-8.) According to Plaintiff, Defendant Burgett, removed him from
2 the DPP on October 1, 2007 in retaliation for his filing a complaint with the California Medical
3 Board on August 17, 2007. However, according to Plaintiff's factual allegations (in both the FAC
4 and SAC) the Medical Board had not responded to Plaintiff's complaint by October 1, 2007, and did
5 not respond until later on October 30, 2007. (Doc. 13 at 7-8.) Because Plaintiff has failed to plead
6 facts demonstrating how the defendants became aware of Plaintiff's complaint with the Medical
7 Board before the Medical Board had provided a response, assuming that Plaintiff has a First
8 Amendment right to file a claim with Medical Board to begin with, the Court finds Plaintiff's
9 retaliation claims remain implausible. (Id.)

10 Attempting to address this deficiency, Plaintiff's SAC asserts that Defendant Burgett, was
11 aware of his complaint with the state's medical board as a result of Plaintiff's numerous CDC 7362
12 Health Care Services Request Forms which identified Plaintiff's medical problems. (Doc. 15 at 16.)
13 Even presuming, this awareness could be imputed to both Greenman and Green, the Court finds
14 Plaintiff's allegations in this regard lack merit. For example, Plaintiff does not assert that he
15 included the fact that he had filed a complaint against the state medical board in any of his multiple
16 treatment request forms, and it appears unlikely that he would have done so in any case. The mere
17 filing of grievances does not support the inference that he had also filed a complaint with the
18 Medical Board. Thus, the allegations of the SAC remain insufficient to demonstrate that these
19 defendants were motivated by any retaliatory purpose and his retaliation claims against Burgett,
20 Greenman, and Green should be dismissed.

21 **C.     State Law Claims**

22 Plaintiff again asserts state law claims for medical malpractice and fraud and deceit. Under
23 the California Tort Claims Act ("CTCA"), a plaintiff may not maintain an action for damages against
24 a public employee unless he has presented a written claim to the state Victim Compensation and
25 Government Claims Board within six months of accrual of the action. See Cal. Gov't Code §§ 905,
26 911.2(a), 945.4 & 950.2; Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir.
27 1995). Thus, in pleading a state law claim, plaintiff must comply, and allege facts demonstrating
28 compliance with CTCA's presentation requirement. State of California v. Superior Court (Bodde),

9

1 | 32 Cal. 4th 1234, 1243-44 (2004).

As the Court's previous order informed, failure of Plaintiff to allege compliance with the CTCA constitutes a failure to state a cause of action, requiring dismissal of his state law claims. (Doc. 13 at 8.) Additionally, as previously noted, Plaintiff conceded that he failed to timely present his state law claims to the California Victim Compensation and Government Claims Board. (Doc. 13 at 8.) Notably, Plaintiff has not altered his allegations in this regard and has failed to demonstrate any curative efforts. (Doc. 15 at 7.) Accordingly, because Plaintiff has not complied with the CTCA, he may not proceed with his state law claims in this action. Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988) (dismissal of state law claims proper where amended complaint failed to allege compliance with CTCA's presentation requirement).

## V.     No Leave to Amend

The Court will not afford Plaintiff further leave to amend. In its previous screening order, the Court advised Plaintiff of the deficiencies in his deliberate indifference to medical treatment and retaliation claims. Nevertheless, Plaintiff has failed to amend his pleadings in a way that corrects these deficiencies. Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir.1992) (dismissal with prejudice upheld where the court instructed the plaintiff regarding the deficiencies in his claims in its prior order).

## VI.    **CONCLUSION**

In accordance with the above, it is HEREBY RECOMMENDED that:

1.     This action be DISMISSED for failure to state a claim; and

2.     This case be closed.

///
///
///
///
///
///
///

1   These findings and recommendations are submitted to the United States District Judge
2 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B).  Within twenty-one days
3 after being served with these findings and recommendations, Plaintiff may file written objections
4 with the Court.  If Plaintiff elects to file written objections, he should caption the document as
5 "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure
6 to file objections within the specified time may waive the right to appeal the District Court's order.
7 See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9 IT IS SO ORDERED.
10 Dated:   **November 28, 2011**                                              /s/ **Jennifer L. Thurston**
                                                                                UNITED STATES MAGISTRATE JUDGE